BASKIN, Judge.
Michael Z. Szczesny, M.D., and Michael Z. Szczesny, M.D., P.A. [collectively Dr. Szczesny], defendants in a wrongful death action, appeal an order setting aside a final judgment in defendants’ favor and granting plaintiff’s motion for new trial. We reverse.
Sylvia Goldenberg was attending a tennis match when she collapsed. She was taken to the Mercy Hospital emergency room. At the emergency room, Dr. Daniel Bader administered Dilantin to prevent seizures. After undergoing tests, Mrs. Gold-enberg was diagnosed as having suffered a seizure and released. Dr. Bader gave her six Dilantin capsules, and instructed her to visit her physician, Dr. Michael Szczesny.
Mrs. Goldenberg visited Dr. Szczesny, who tested her Dilantin levels and determined that they were low. When Dr. Szczesny recommended that she see Dr. Bader, Mrs. Goldenberg refused. She then visited another neurologist who diagnosed her as having suffered a seizure and prescribed Dilantin. Sometime later, Mrs. Goldenberg was diagnosed as suffering from aplastic anemia. Later, she fell, was hospitalized, and suffered a fever; her condition deteriorated and she died.
Alfred Goldenberg, as personal representative of Mrs. Goldenberg’s estate, sued Dr. Szczesny, seeking damages for her wrongful death. Goldenberg alleged that Mrs. Goldenberg’s aplastic anemia was caused by the large amounts of Dilantin she consumed, and that Dr. Szczesny had improperly diagnosed the condition that caused Mrs. Goldenberg to faint. At trial, Dr. Bader testified that he had given Mrs. Goldenberg six Dilantin pills when she was discharged. Dr. Bader was not called as an expert witness; he testified as to the treatment Mrs. Goldenberg received in the emergency room. At the conclusion of the trial, the jury returned a verdict in defendants’ favor, and the court entered a final judgment.
Personal representative Goldenberg filed a motion for new trial and a motion to set aside the judgment. He alleged that Dr. Bader committed perjury when he testified that he gave Mrs. Goldenberg only six Dilantin pills when he discharged her. Gold-enberg asserted that Dr. Bader had telephoned Mrs. Goldenberg’s pharmacy a prescription for 100 Dilantin pills on the day after her discharge. In opposition to the motion, Szczesny argued unsuccessfully that this information was available to the plaintiff prior to trial as it was contained in a hospital discharge summary, which Dr. Bader read at his deposition. The trial court granted the motions, set aside the final judgment, and ordered a new trial.
In Action Fire Safety Equip., Inc. v. Biscayne Fire Equip. Co., 383 So.2d 969 (Fla. 3d DCA 1980), this court stated:
A motion for new trial is directed to the sound discretion of the trial court, and its discretion will not be overturned in the absence of a showing that it abused its discretion. We, however, cannot review the trial court’s exercise of discretion when the record before us fails to reflect that it was exercised within the law’s parameters. The parameters are these: Would the new evidence probably change the result if a new trial is granted? Has it been discovered since the trial? Could it have been discovered before the trial by the exercise of due diligence? Is it material to the issues? Is it merely cumulative or impeaching?
Action Fire Safety Equip., Inc., 383 So.2d at 972-973 (citations omitted); Morhaim v. State Farm Fire & Cas. Co., 559 So.2d 1240, 1241 (Fla. 3d DCA), review' denied, 574 So.2d 142 (Fla.1990). The record before us demonstrates that the court abused its discretion when it granted the motion for new trial based on its impression of the new facts, rather than determining whether the new facts would affect the jury’s decision.
Goldenberg asserted that Dr. Szczesny’s treatment of Mrs. Goldenberg with Dilan- *525 tin and his failure to diagnose her condition caused her death. The fact that Dr. Bader prescribed additional Dilantin pills would not alter the jury’s consideration of Dr. Szczesny’s treatment of Mrs. Goldenberg, particularly in view of the evidence presented at trial that Mrs. Goldenberg received Dilantin from other neurologists.[1] In addition, the evidence is immaterial to the issue of whether Dr. Szczesny’s treatment of Mrs. Goldenberg with Dilantin resulted in her wrongful death. “The issues to which newly discovered evidence must be material are the real issues in the case, not issues improperly injected.” City of Winter Haven v. Tuttle/White Constructors, 370 So.2d 829, 831-832 (Fla. 2d DCA 1979). Consequently, we conclude that the proffered testimony is merely impeachment testimony of Dr. Bader. The newly discovered evidence has no bearing on Dr. Szczes-ny’s testimony or his representations. See Southern Trenching, Inc. v. Diago, 600 So.2d 1166 (Fla. 3d DCA 1992); Sledge v. Richards, 592 So.2d 316 (Fla. 3d DCA 1991), review denied, 605 So.2d 1266 (Fla. 1992). Dr. Bader was not offered as an expert witness as to the standard of care Mrs. Goldenberg received from Dr. Szczes-ny. Thus, his testimony would not affect the jury’s analysis of Dr. Szczesny’s care.
For the foregoing reasons, we hold that the motion for new trial was improperly granted. We therefore reverse the order on appeal and remand for reinstatement of the final judgment.
Reversed and remanded with instructions.

. We also note that the discrepancy between Dr. Bader's trial testimony and the testimony Gold-enberg proffered in support of his motion for new trial falls short of the showing required to demonstrate perjury. See Blum v. Avick, 172 So.2d 495, 498 (Fla. 3d DCA 1965) (inconsistent testimony falls short of perjury).